**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian E Hillebrand, et al., | No. CV-25-02220-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| United Parcel Service Incorporated, | |
| Defendant. | |

Before the Court is Plaintiff Brian E. Hillebrand's ("Hillebrand") Motion for Leave to File his First Amended Complaint.  (Doc. 34). Defendant United Parcel Service Incorporated ("UPS") has filed its Response opposing Hillebrand's Motion for Leave to File.  (Doc. 35).[1] The Court will grant Hillebrand's Motion for Leave to Amend his Complaint for all claims except his breach of contract claim.

## I.    Background

Hillebrand was a driver for UPS in two different departments when the actions giving rise to this Complaint surfaced.  (Doc. 34-1 at 4).  When Hillebrand was not driving

---

[1] Also pending on the docket is the parties Joint Motion to Consider Hillebrand's Reply in support of his Motion for Leave to File First Amended Complaint as timely filed. (Doc. 38). Hillebrand's Reply was due on December 8, 2025. It was instead filed on December 9, 2025.  Hillebrand states that counsel experienced technical difficulties as a result of an ECF outage. Under Fed. R. Civ. P. 6(a)(3)(A), in the event of a party not being able to access the clerk's office, "[u]nless the court orders otherwise, if the clerk's office is inaccessible . . . on the last day for filing . . ., then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(3)(A). Inaccesiblity as it describes the clerk's office, also includes an ECF outage. *Holmes v. Clark Cnty.*, 2025 WL 2421250, at *1 (D. Nev. Aug. 21, 2025) (stating as much). Therefore, the Joint Motion (Doc. 38) is **granted**.

for the "Package," department, he could be found driving for the "Feeder" department. (*Id.*) In his First Amended Complaint ("FAC"), Hillebrand alleges that he was wrongfully terminated for a while (unrelated to his current claims), but that he returned to work in May of 2022. (*Id.* at 13). When he returned, he was dismayed to find that Lytx cameras had been fitted in the UPS delivery trucks in the Package department. (*Id.* at 13). After some time, he states he started experiencing difficulties with his vision that included problems with reading what was on his hand-held work device. (*Id.* at 14). Between October of 2023 and May of 2024, Hillebrand states he alternated between the Package and Feeder departments. (*Id.* at 16). Both departments at this point had the Lytx cameras in their trucks. (*Id.* at 15). Hillebrand states that his symptoms worsened and he pinpointed the cause as the infrared light from the Lytx cameras. (*Id.* at 17). When he drove vehicles with the Lytx cameras, he said he suffered from the following litany of symptoms: severe eye strain, fatigue, and difficulty keeping his eyes open. (*Id.*) He states that he feared his driving was unsafe and that he could not continue to operate trucks that had the cameras. (*Id.* at 17–18). Eager to find a solution, Hillebrand states that he began covering the Lytx cameras when driving his assigned vehicles. (*Id.* at 20). Not being exposed to the cameras helped him, he contends. (*Id.*) His headaches and fatigue disappeared, and he could operate a vehicle normally. (*Id.*)

But then another issue arose. He states that he received messages from UPS warning him that covering or otherwise tampering with the cameras could result in his termination. (*Id.* at 22). After that, Hillebrand states he filed a grievance stating that the cameras were "dangerous to his health." (*Id.* at 23). In response, he states he was told by management that he needed to file an official Americans with Disabilities Act ("ADA") accommodation for his disability. (*Id.*) To file an ADA accommodation request, he enlisted the help of his co-Plaintiff Jay V. Shore ("Shore"). (*Id.* at 30). His accommodation request lists his disability as sensitivity to the infrared cameras outfitted in the UPS trucks. (*Id.* at 32). Hillebrand specifically asked that UPS remove the cameras from all of their trucks so that Hillebrand could continue to do his job. (*Id.* at 34). Once he started the

- 2 -

process of meeting with representatives of UPS to determine the proper course forward, he states that his "ADA advocate" and co-Plaintiff Shore, was not allowed to attend the meetings. (Id. at 36). After this point, he states the interactive process of meeting with management to resolve his disability accommodation broke down and he was effectively terminated by being placed on indefinite unpaid leave. (*Id.* at 40–55). Now, Hillebrand brings the following claims against UPS: (1) violation of the ADA under 42 U.S.C. § 12112(a); (2) failure to provide reasonable accommodation under 42 U.S.C. § 12112(b)(5)(A); (3) Interference with ADA rights under 42 U.S.C. § 12203(b) and 29 C.F.R. § 1630.12(b); (4) breach of contract; and lastly (5) ADA retaliation under 42 U.S.C. § 12203(a). (*Id.* at 16–22).

## II.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Rule 12(b)(6) motions may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

To survive a Rule 12(b)(6) motion, the complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 but "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations omitted).

The Court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Tr.*, 768 F.3d at 945. But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**III.    Discussion**

In his Motion to Amend, Hillebrand seeks to clarify some of his claims and add a claim for ADA retaliation. The Court will grant Hillebrand leave to amend all his claims except his breach of contract claim because the court finds that the breach of contract claim is preempted by the Labor Management Relations Act ("LMRA").

**A.  Motion to Amend**

In opposing Hillebrand's Motion to Amend, UPS argues that allowing Hillebrand leave to amend his ADA interference claim would result in two operative complaints for the same conduct.  (Doc. 35 at 2–3). Essentially, the argument is that Hillebrand's ADA interference claim would go forward under Hillebrand's FAC, while Shore would still be left to pursue his own ADA interference claim under the Original Complaint.  The second argument advanced against amendment by UPS is futile. (Doc. 35 at 3). UPS argues that allowing Hillebrand to bring an ADA interference claim for himself is preempted by LMRA.  (*Id.*) UPS argues the same against allowing the addition of Count five for ADA retaliation because UPS "decided not to include Shore in certain ADA meetings *before* Hillebrand engaged in the alleged October 2024 protected activity."  (*Id.* at 5).  The argument against allowing amendment for ADA retaliation gets at the nuances of establishing casual connection between the protected activity and the adverse action.  In response, Hillebrand states that opposing a motion to amend is not the right time to assess the merits of the underlying claims and instead, that should be done at the motion to dismiss stage. (Doc. 36 at 3). While the Court agrees with Hillebrand that the amendment should be granted, the Court disagrees that the sufficiency of the amendment should not be tested.

- 4 -

While the district court maintains discretion to grant or deny a motion to amend, the Rule specifies that such "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330 (1971); *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1052 (9th Cir.2001) ("A district court's discretion to deny leave to amend . . . is not absolute."); *California Architectural Bldg. Prods.*, *Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1472 (9th Cir.1987). When exercising its discretion, the courts should be guided by the underlying purpose of Rule 15 to decide cases on the merits rather than on pleading technicalities. *Eldridge v. Block,* 832 F.2d 1132, 1135 (9th Cir.1987) (citations omitted). Moreover, Rule 15 favors amendments and the policy of allowing amendment should be applied with "extreme liberality." *Id.* There are, however, limitations on Rule 15's liberal contours. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Owens v. Kaiser Found., Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir. 2001). The limitations include (1) undue delay; (2) bad faith or dilatory motives on the part of the movant; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; (5) futility of the proposed amendment. *Foman*, 371 U.S. at 182. Even keeping in mind the above factors, the analysis should be performed with all inferences in favor of granting leave to amend. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir.1999).

## 1. Futility

A proposed amendment is futile if it could not withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6). To withstand dismissal under Rule 12(b)(6), a plaintiff must put forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Hillebrand has alleged enough to withstand a motion to dismiss on all his claims except his breach of contract claim.

### a.    Hillebrand's claim for an ADA violation under § 12112(a)

To state a prima facie case under § 12112(a), Hillebrand has to sufficiently allege that he (1) had a disability within the meaning of the ADA; (2) that he was qualified for the position; (3) and that UPS discriminated against Hillebrand because of his disability.

*See Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

Hillebrand alleges that he has a disability within the meaning of the ADA because he has photosensitivity to infrared light which "substantially limits one or more major life activities, including but not limited seeing, concentrating, working, and interacting with others." (Doc. 34-1 at ¶ 98). Immediately after that statement he provides the following one: "Plaintiff Hillebrand was qualified for his position and could perform the essential functions of his job with or without reasonable accommodation." (*Id.* at ¶ 99). Then, he states that he was discriminated against by UPS because he was removed "from service indefinitely without pay." (*Id.* at ¶ 101a). Accepting all factual allegations in the Complaint as true, and drawing all inferences in Hillebrand's favor, the Court finds that Hillebrand's claim for an ADA violation under § 12112(a) can survive a motion to dismiss. *See Ashcroft*, 556 U.S. at 678–79.

### b. Hillebrand's claim for failure to provide reasonable accommodation under § 12112(b)(5)(A)

A claim for failure to provide reasonable accommodation under the ADA requires that the employee is a qualified individual under the ADA, provides the employer with notice of their disability accommodation, and reasonable accommodation is available for the employer to provide. 42 U.S.C. § 12112(b)(5)(A); *Snapp v. United Transportation Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). An accommodation is reasonable if it "would not place an undue burden on the operation of the employer's business." *Snapp*, 889 F.3d at 1095 (citing 42 U.S.C. § 12112(b)(5)(A)). Additionally, notifying an employer of a need for accommodation, sets off a duty to engage in the interactive process in which the parties discuss the "employee's abilities and limitations, the employer's needs for various positions, and a possible middle ground for accommodating the employee." *Id.*

According to Hillebrand, he is a qualified individual under the ADA. (Doc. 34-1 at ¶ 98); *see also* 42 U.S.C. § 12102(4)(A) ("[t]he definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter"). He states he provided notice to UPS about

his disability. (Doc. 34-1 at ¶ 104); 42 U.S.C§ 12112(b)(5)(A). He argues that reasonable accommodation, like providing Hillebrand with a lateral transfer or giving him a non-Lytx camera outfitted truck to drive, was available for UPS to provide, and could have been used to accommodate him. (Doc. 34-1 at ¶ 106–107). He was not provided accommodation and UPS did not "engage in the interactive process in good faith." (Doc. 34-1 at 108). Having set forth enough facts for the Court to determine that Hillebrand has enough "*plausible* factual allegations that cover all the material elements necessary to sustain recovery under *some* viable legal theory," his failure to provide accommodations claim survives a motion to dismiss. *See Twombly*, 550 U.S. at 562 (citation omitted) (emphasis in original).

### c. Hillebrand's ADA Interference Claim[2]

In his proposed FAC, Hillebrand removes co-Plaintiff Shore from his ADA interference claim. (Doc. 34-1 at 19–20). UPS does not attack Hillebrand's proposed FAC for futility. Instead, UPS states that Shore and Hillebrand should not be allowed to pursue separate claims for ADA interference. According to UPS, the result that will ensue if Hillebrand is allowed leave to amend, is that there will be two operative complaints, which the rules simply do not allow. (Doc. 35 at 3). The Court disagrees that allowing Hillebrand to proceed with his amendment would make it so that two operative complaints are at play.

First, Hillebrand has sufficiently pled enough facts, if taken as true, to make a plausible claim for ADA interference. The ADA's anti-interference provision states the following:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or

---

[2] Though Jay V. Shore is listed in the title of the FAC, Shore has not joined Hillebrand's Motion to Amend. The FAC also does not list any claims brought by Shore. This is important because the FAC will supersede the original Complaint, and because the FAC makes no mention of any claim that Shore is bringing, nor has Shore responded to the opposition to the FAC or filed anything with the Court since September 22, 2025, Shore will be dismissed from this lawsuit. In fact, in his September Response to the Court's Order to Show Cause for failing to appear at the Court's mandated Rule 16 Scheduling Conference, Shore stated the following: "I, Jay V. Shore, refuse to say more, until good faith is demonstrated by the Court concerning this matter." (Doc. 26 at 3).

protected by this chapter.

*See* 42 U.S.C. § 12203(b) (stating the above verbatim). Interference is interpreted broadly by the Ninth Circuit but has also been left largely undefined. *Brown v. City of Tucson*, 336 F.3d 1181, 1191–93 (9th Cir. 2003) (stating both that interference should be construed broadly, but also that "the ADA's interference provision does not bar any action whatsoever that in any way hinders a member of a protected class"). District courts that have interpreted the ADA's interference provision have interpreted it to mean any action by an employer that deters or gives a reasonable employee pause about seeking accommodations. *Santos v. Cnty. of Humboldt*, 2023 WL 6882748, at *7 (N.D. Cal. Oct. 18, 2023); *Colasanti v. City of Portland*, 2021 WL 4317286, at *6 (D. Or. Aug. 19, 2021), *report and recommendation adopted*, 2021 WL 4317667 (D. Or. Sept. 20, 2021); *Castellano v. Access Premier Realty, Inc.*, 181 F. Supp. 3d 798, 809 (E.D. Cal. 2016).

Here, Hillebrand alleges that by not allowing his ADA advocate, Shore, at meetings between UPS and Hillebrand, UPS effectively discouraged Hillebrand from pursuing his ADA accommodation rights. (Doc. 34-1 at ¶¶ 110–117). While not the most factually detailed allegation, the motion to dismiss standard does not require Hillebrand to populate his FAC with ample facts. His FAC simply needs to plead "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Facial plausibility is not an onerous standard. When the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," facial plausibility is met. *Ashcroft*, 556 U.S. at 662. Moreover, UPS's assertion that allowing Hillebrand to amend his Complaint to remove Shore from his ADA interference claim would result in two separate complaints, is unsupported. The FAC will supersede the original Complaint and only Hillebrand's ADA interference claim will go forward at this time, not Shore's. *See Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir.1990) (stating that an amended complaint supersedes its original complaint). Therefore, the Court finds that Hillebrand has alleged enough for his ADA interference claim to withstand a motion to dismiss.

**d. Breach of Contract**

For the final contested claim, UPS asserts that Hillebrand's breach of contract claim is preempted by LMRA. (Doc. 35 at 3). UPS points to Hillebrand's FAC where he mentions the UPS National Master Agreement for 2023–2028 (otherwise referred to by the parties as the "CBA")[3] . (Doc. 34-1 at ¶ 119; Doc. 35 at 4).  He specifically mentions Article 6 of the Agreement, which he argues "explicitly prohibits the installation of inward-facing cameras in vehicles and the use of in-cab audio recording or videotaping." (Doc. 34-1 at ¶ 120).  According to UPS, because he invoked the CBA, state law violations, like breach of contract, are displaced by the LMRA, especially as applied to private bargaining contracts. (Doc. 35 at 4).   Alternatively, UPS also argues that Hillebrand's breach of contract claim is time-barred and that Hillebrand has failed to exhaust his administrative remedies.  (Doc. 14 at 9–10).  The Court agrees that the breach of contract claim is preempted by LMRA.

Section 301 of LMRA preempts state law claims that are rooted in rights that have their genesis in a collective bargaining agreement.  *Beals v. Kiewit Pacific Co., Inc.*, 114 F.3d 892, 894 (1997).  Also swept under LMRA's preclusive effect are claims that are substantially dependent on an interpretation of a collective bargaining agreement.  *Id.* Whereas independent employment contracts not formed on the basis of collective bargaining are not preempted by LMRA, even if a collective bargain agreement is in place. *Id.*

Here, Hillebrand's breach of contract claim is entirely planted in the CBA. (Doc. 34-1 at ¶ 56–57; *see also* Doc. 1-1 at 24, Ex. H, Article 6 of the CBA). Determining this issue would require the Court to interpret the CBA governing Hillebrand's employment relationship with UPS. And that, the Court cannot do.  Case law is clear on this point.  The first Supreme Court case to address section 301 of LMRA was *Textile Workers*. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957) (providing guidance on the reach of section 301 of LMRA).  In plain terms, the Supreme Court stated that "[f]ederal law, which the courts must fashion from the policy of our national labor laws," controls in cases that touch

_____

[3] For consistency, the Court will also refer to it as the Collective Bargaining Agreement or CBA.

on section 301 of LMRA. *Id.* at 456.  The Supreme Court refined this analysis even more in *Teamsters*. *See Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962) (analyzing the preclusive effects of section 301).  Ultimately, the Court held that a suit alleging a violation of a provision of a labor contract must be brought under section 301 and be resolved under federal law. *Id.* at 102–105.

In his Complaint, Hillebrand, under his breach of contract claim, mentions the CBA no fewer than three times.  (Doc. 34-1 at ¶ 56–58).  He cites no other contract under which he can bring his breach of contract claim. Because Hillebrand has brought a simple breach of contract claim, with no reference to section 301, the Court cannot decide the issue as it has been brought to the Court.  Therefore, this claim will be dismissed because a simple state law breach of contract claim is not legally viable.

### e.  Hillebrand's ADA Retaliation Claim

Hillebrand has also sufficiently pled enough facts, if taken as true, to make a plausible claim for ADA retaliation.  In opposing the addition of Count V, UPS argues that Hillebrand cannot establish a causal link between the apparent protected activities and UPS's alleged retaliation. (Doc. 35 at 5).

> The ADA's retaliation provision states the following: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."

42 U.S.C. § 12203(a).  A prima facie case for retaliation under the ADA requires an employee to show the following: (1) he engaged in a protected activity; (2) suffered an adverse employment action; (3) causal link between the two. *Brown v. City of Tucson,* 336 F.3d 1181, 1186–87 (9th Cir. 2003).

Hillebrand has alleged a facially plausible prima facie case to withstand a motion to dismiss. While UPS focuses its opposition to this claim on the causal connection between the protected activity and the adverse action, at this stage, Hillebrand only needs to *adequately plead* all three elements in a way that allows the Court to draw a reasonable

inference that he was retaliated against. *Boquist*, 32 F.4th at 773. By lodging an EEOC complaint, Hillebrand engaged in a protected activity. (Doc. 34-1 at 126; *See, e.g., McAlindin v. County of San Diego,* 192 F.3d 1226, 1238 (9th Cir.1999) (stating that "vigorously asserting [one's] rights" under the ADA and other state and federal discrimination laws constitutes protected activity)); *Hashimoto v. Dalton,* 118 F.3d 671, 679–80 (9th Cir.1997) (determining that meeting with an Equal Employment Opportunity counselor to discuss sex and race discrimination constitutes protected activity). He then claims he suffered an adverse employment action when he was indefinitely placed on unpaid leave. (Doc. 34-1 at 128; *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000) (defining adverse employment action as any action "reasonably likely to deter employees from engaging in protected activity.")). He alleges that in consequence for exercising his ADA rights by seeking accommodation, he was effectively terminated. (Doc. 34-1 at 128–129). *Ray v. Henderson,* 217 F.3d 1234, 1243 (9th Cir. 2000) (standing for the proposition that when adverse employment decisions closely follow complaints of discrimination, retaliatory intent may be inferred). The allegations set forth by Hillebrand suffice to resist a motion to dismiss.

### 2. Undue Delay

While undue delay on its own is insufficient to deny a motion to amend a complaint, it is one part of the general consideration used by the courts to determine if amendment should be granted. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir.1999). "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Also relevant is if the amended pleading will refine and clarify the issues before the court. *Cuevas v. City of San Luis*, Ariz., 2008 WL 4820113, at *2 (D. Ariz. Nov. 3, 2008).

In favor of his Motion to Amend and to address the undue delay factor, Hillebrand states the following: "Plaintiff is seeking to amend his complaint within the time allowed by the Court's Scheduling Order, and before any substantial discovery has been

conducted." (Doc. 34 at 3). Discovery has not yet been substantially completed in this case, and because leave to amend should be liberally granted, the Court finds that there was no undue delay on the part of Plaintiffs in amending their Complaint. *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 712 (9th Cir.2001) (quoting *Morongo Bank of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990)).

### 3. Bad Faith

A showing of bad faith is supported when it can be demonstrated that plaintiff's motives for amending the complaint were for an improper purpose. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1053 (9th Cir. 2003). Nothing in Hillebrand's pleadings suggest that Hillebrand is acting in bad faith and UPS has not suggested that he is. Finding no bad faith, the Court will move on to the prejudice factor.

### 4. Prejudice

Prejudice to the opposing party carries the greatest weight in determining whether leave to amend should be granted, despite its liberal applicability. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir.1987). Prejudice to the opposing party is the "touchstone of the inquiry under rule 15(a)." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.2d 363 368 (5th Cir.2001); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir.1973) (stating that "the crucial factor is the resulting prejudice to the opposing party"). The burden of proving prejudice is on the party opposing the motion. *DCD Programs, LTD.*, 833 F.2d at 187. UPS does not carry its burden of proving prejudice. In fact, nowhere in its opposition to Hillebrand's Motion to Amend does UPS even mention the word prejudice except in its legal standards section. The Court does not believe UPS will suffer prejudice by allowing Hillebrand to amend his Complaint. Not only has UPS not argued prejudice, but UPS would also not have to rethink its defenses and strategies when litigating the claims brought by Hillebrand. *Hale v. Lloyd's, London*, 2020 WL 262820, at *5 (D. Haw. Jan. 17, 2020). Therefore, the Court finds that this factor also favors Hillebrand.

### 5. Whether plaintiff has amended the complaint previously

- 12 -

When a plaintiff has repeatedly failed to cure deficiencies by previously allowed amendments, this generally weighs in favor of not granting a motion to amend. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Because this is the Plaintiffs' First Amended Complaint, and there have not been repeated attempts to amend, this factor favors allowing the amendment.

**IV.     Conclusion**

Hillebrand's Motion for Leave to Amend his Complaint is granted for all claims except his breach of contract claim.  The breach of contract claim, as plead, is preempted by LMRA. Plaintiff Jay V. Shore, because he has not joined in on Hillebrand's Motion for Leave to Amend his Complaint or filed a response to UPS's Motion to Dismiss, will be dismissed from this action.

Accordingly,

**IT IS ORDERED** that Hillebrand's Motion to Amend (Doc. 34) is **granted as to all claims except Count IV: breach of contract.**

**IT IS FURTHER ORDERED** that UPS's Motion to Dismiss (Doc. 14) is **moot.**

**IT IS FURTHER ORDERED** the Joint Motion to Consider (Doc. 38) is **granted.**

**IT IS FURTHER ORDERED** that Plaintiff Jay V. Shore is dismissed from this action. The Clerk of Court is kindly directed to terminate Plaintiff Jay V. Shore as a Plaintiff in this case.

**IT IS FINALLY ORDERED** that Plaintiff shall file a clean version of his First Amended Complaint within three (3) business days from the date of this Order.

Dated this 6th day of March, 2026.

Honorable Diane J. Humetewa
United States District Judge